IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONROE MOTOR CARS, LLC | CIVIL ACTION NO.:07 CV 11469 |
| | HONORABLE CHARLES L. BRIEANT |
| *Plaintiff*, | |
| | **NOTICE OF MOTION TO COMPEL** |
| v. | **ARBITRATION and DISMISS** |
| GENERAL MOTORS CORPORATION | |
| *Defendant*. | |

## NOTICE OF MOTION OF DEFENDANT GENERAL MOTORS CORPORATION TO COMPEL ARBITRATION AND TO DISMISS THE COMPLAINT

Please take notice that the undersigned will bring the above Motion to Compel Arbitration and to Dismiss the Complaint pursuant to an Arbitration Agreement entered into between plaintiff and General Motors in accordance with the Federal Arbitration Act, 9 U.S.C. §2 *et. seq*. before this Court in Room 218, at the United States District Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York on the 8th day of February, 2008 at 10:00 a.m. or as soon thereafter as counsel can be heard. General Motors files the Motion to Compel Arbitration Pursuant to 9 U.S.C. §4 and the Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6). In support of this Motion, General Motors relies on the Court's records and files in this matter and the accompanying Brief.

LAVIN, O'NEIL, RICCI, CEDRONE & DiSIPIO

BY:  /s/
Timothy J. McHugh (3393)
420 Lexington Avenue
Graybar Building
Suite 2900
New York, NY  10170
Tel No.:    (212) 319-6898
Fax No.:   (212) 319-6932
E-mail:    tmchugh@lavin-law.com

Of Counsel:

Joseph E. O'Neil
John J. O'Donnell
190 North Independence Mall West
6th & Race Streets, Suite 500
Philadelphia, PA  19106
Tel Nos.:	(215) 351-7901
	(215) 351-7936
Fax Nos.:	(215) 251-3086
	(215) 351-3085
E-mail:	joneil@lavin-law.com
	jodonnell@lavin-law.com

Attorneys for Defendant,
General Motors Corporation

1089466v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONROE MOTOR CARS, LLC | : CIVIL ACTION NO.:07 CV 11469 |
| *Plaintiff*, | : |
| | : **BRIEF IN SUPPORT OF MOTION** |
| v. | : |
| GENERAL MOTORS CORPORATION | : |
| *Defendant*. | : |

### BRIEF IN SUPPORT OF MOTION OF DEFENDANT GENERAL MOTORS CORPORATION TO COMPEL ARBITRATION AND TO DISMISS THE COMPLAINT

Defendant, General Motors Corporation ("General Motors"), submits this brief in support of its motion to compel arbitration and to dismiss the Complaint. Prior to filing this motion, General Motors submitted its demand for arbitration.

**I.    PROCEDURAL HISTORY**

Plaintiff, Monroe Motor Cars, LLC ("Monroe"), commenced this civil action against General Motors by filing a Complaint on or about October 30, 2007 in the Supreme Court of the State of New York, County of Orange. After being served with the Complaint on December 3, 2007, General Motors timely filed a Notice of Removal removing this action from the Supreme Court of New York to this Court. Because there is a binding arbitration agreement between the parties, General Motors now files this motion to compel arbitration and to dismiss the Complaint. General Motors served on plaintiff a demand for arbitration prior to filing this motion. A copy of the demand is attached as Exhibit "A."

## II. FACTUAL BACKGROUND

On April 27, 2007 Monroe agreed to the termination of its Dealer Sales and Service Agreement with General Motors and executed a Termination and Release Agreement ("Termination Agreement"), a copy of which is attached as Exhibit "B."

The Termination Agreement that Monroe executed contained a binding private arbitration provision which states:

> **9.    Disputes-Arbitration**
>
> (a)    Subject to the following provisions of this section, GM and Dealer agree to submit to final and binding arbitration, upon either party's written notice, any and all claims, disputes, and controversies between them arising under or relating to this Agreement and its negotiation, execution, administration, modification, extension or enforcement (collectively "Claims").  Such arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") at the AAA regional office nearest the Dealership Premises.  The intent of this paragraph is that parties hereto agree to mandatory, binding arbitration of Claims in a private proceeding involving only the parties.  Under no circumstances shall any Claim be combined with, joined with, or adjudicated in, a common proceeding with Claims involving persons in addition to the parties.
>
> (b)    GM and Dealer agree that the dispute resolution process outlined in this section shall be the exclusive mechanism for resolving any Claims.  All arbitration awards are binding and non-appealable except as otherwise provided in the United States Arbitration Act (9 U.S.C. §1, *et seq.*).  Any court with jurisdiction may enter judgment upon the award rendered by the arbitrator, and the parties agree to be bound by such award.

The Termination Agreement called for a payment by General Motors to Monroe and provided a process by which General Motors would repurchase some of Monroe's new vehicle inventory, parts, accessories and special tools.  A dispute arose over the repurchase of some of these items and Monroe filed this lawsuit.  General Motors has demanded that Monroe submit these claims to private arbitration and now seeks to enforce the arbitration provision of the Termination Agreement.

### III. LEGAL ARGUMENT

**A.   The Federal Arbitration Act mandates enforcement of the arbitration provision**.

As set forth above, Monroe and General Motors entered into a Termination Agreement containing an arbitration provision governed by the Federal Arbitration Act ("FAA"). Section 2 of the FAA provides that written arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. *See* 9 U.S.C. § 2; *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 683 (1996). Advancing the federal policy in favor of arbitration, the FAA directs district courts to enforce arbitration agreements by issuing an affirmative order compelling the parties to engage in arbitration in any case that raises a dispute referable to arbitration. *See* 9 U.S.C. §§ 3, 4; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22, 24 (1983). The policy in favor of arbitration clauses is so strong that all federal and state claims are subject to them unless Congress or the state legislature has specifically carved out an exception. *See Desiderio v. NASD*, 191 F.3d 198, 204-205 (2d Cir. 1999) (finding a Title VII claim susceptible to arbitration because there was no explicit exception noted in the statute) and *Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, 638 (1993) (holding the same principle for various federal and state claims).

**B.   All of the claims of Monroe are covered by the arbitration provision.**

There is no question that all claims contained in the Complaint are covered by the arbitration clause and therefore this action should be dismissed entirely with an order compelling arbitration of all claims. Determining if this dispute is the subject of binding private arbitration under the FAA involves four simple questions: (1) whether the parties agreed to arbitrate; (2) whether the claims are within the scope of the arbitration clause; (3) whether the legislature considers any claims non-arbitrable; and (4) if some but not all of the claims are arbitrable whether the balance of the claims

3

should be stayed pending arbitration. *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.,* 239 F. Supp.2d 332, 335-336 (S.D.N.Y. 2002).

One only needs to look at the Termination Agreement to conclude that Monroe and General Motors agreed to arbitrate these claims given the language of Paragraph 9(a) of the Termination Agreement which provides that Monroe and General Motors:

> [A]gree to submit to final and binding arbitration, upon either party's written notice, **any and all claims, disputes, and controversies between them arising under or relating to this Agreement and its negotiation, execution, administration, modification, extension or enforcement**.

[Emphasis added.]

Language such as "any and all claims" and "arising under or relating to this Agreement" has time and time again been construed as broadly as possible in favor of arbitration. *See Ace Capital Re Overseas Ltd. v. Cent United Life Ins. Co.,* 307 F.3d 24, 26 (2d Cir. 2002) (holding "any dispute [that] shall arise between the parties … with reference to interpretation of this Agreement or their rights with respect to any transaction involved" requires submission to arbitration; *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (holding "any dispute, controversy or claim arising under or in connection with [the agreement]" means that the dispute must be decided in a private arbitration); and, *Collins & Aikman Products Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (holding "any claim or controversy arising out of or relating to this agreement" requires submission to arbitration).

Monroe's claims fall within the scope of the arbitration provision of the Termination Agreement. Monroe's claims involve a dispute over the "return of its GM new car inventory," "delay in repurchase of said vehicles," and failure to "effectuate the return [of] inventories of repair parts, accessories, and special tools." *See* Complaint at ¶¶8-9. In a nutshell, Monroe claims that General Motors did not perform its re-purchase obligations under the terms of the Termination Agreement. *Id.*

at ¶¶10-13. Thus, all of Monroe's claims "arise out of, or relate to" the Termination Agreement and fall within the scope of the arbitration provision.

None of Monroe's claims are exempt from private arbitration. The U.S. Court of Appeals for the Second Circuit addressed a similar situation as is presented here in *Arciniaga v. General Motors Corporation*, 460 F.3d 231 (2d Cir. 2006) involving a similar arbitration provision. In *Arciniaga*, General Motors exercised its right to purchase all of the common stock of the dealership. The plaintiff dealer filed a lawsuit alleging discrimination, violation of the Automobile Dealer's Day in Court Act, breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty and fraud. General Motors moved to compel the arbitration. The District Court denied the motion. On an interlocutory appeal, the Second Circuit reversed the District Court and remanded the case with instructions that the District Court grant the motion to compel the private arbitration holding that the language of the agreement and the strong federal policy in favor of arbitration required that this matter proceed in a private arbitration. *Id.*

Monroe's statutory claim under the New York Franchise Motor Vehicle Act is subject to arbitration just as the dealer's statutory claim in *Arciniaga* was subject to arbitration since the statute does not contain any express exception to arbitration clauses. *See* New York Franchise Motor Vehicle Act, Article 17-A, §§ 460-473. Thus, all of Monroe's claims are subject to the arbitration clause. Federal courts have uniformly held that when all claims fall within the scope of an arbitration clause then all claims without exception must be submitted to binding arbitration and consequently the federal action must be dismissed. *See Lewis*, 239 F. Supp.2d at 341 (dismissing plaintiff's action and issuing an order compelling arbitration because all claims raised fell under the arbitration agreement), *Perry v. New York Law School*, No. 03 Civ. 9221, 2004 U.S. Dist. LEXIS 14516 at *14-15 (S.D.N.Y. Jul. 28, 2004) (same), *Cicchetti v. Davis Selected Advisors*, No. 02 Civ. 10150, 2003 U.S. Dist. LEXIS 20747 at *9-10 (S.D.N.Y. Nov. 17, 2003) (same).

## IV. CONCLUSION

For the foregoing reasons, General Motors respectfully requests that this Court grant the Motion of General Motors to Compel Arbitration and to Dismiss the Complaint.

                                LAVIN, O'NEIL, RICCI, CEDRONE & DiSIPIO

                BY:        /s/
                              Timothy J. McHugh (3393)
                              420 Lexington Avenue
                              Graybar Building
                              Suite 2900
                              New York, NY  10170
                              Tel No.:      (212) 319-6898
                              Fax No.:     (212) 319-6932
                              E-mail:       tmchugh@lavin-law.com

                              Of Counsel:

                              Joseph E. O'Neil
                              John J. O'Donnell
                              190 North Independence Mall West
                              6th & Race Streets, Suite 500
                              Philadelphia, PA  19106
                              Tel Nos.:     (215) 351-7901
                                                    (215) 351-7936
                              Fax Nos.:    (215) 251-3086
                                                     (215) 351-3085
                              E-mail:       joneil@lavin-law.com
                                                     jodonnell@lavin-law.com

                              Attorneys for Defendant,
                              General Motors Corporation

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK            )
                             ) ss.:
COUNTY OF NEW YORK           )

      Janice Conquet, being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age and resides in Bronx County, New York.

      On December 27, 2007, deponent served the within Motion of Defendant, General Motors Corporation, to Compel Arbitration and to Dismiss the Complaint and Brief in Support of Motion of Defendant, General Motors Corporation, to Compel Arbitration and to Dismiss the Complaint upon:

    Jed S. Freeman
    The Margolis Law Firm LLC
    5 Becker Farm Road
    P.O. Box 420
    Roseland, NJ  07068

at the address designated by said attorney for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed envelope in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

                                                           /s/
                                                    Janice Conquet

Sworn to before me this
27th day of December, 2007

    /s/
Notary Public

TIMOTHY J. MCHUGH
Notary Public, State of New York
No. 02MC506248
Qualified in Suffolk County
Commission Expires July 1, 2010

1089476v1

EXHIBIT "A"

# LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO

### ATTORNEYS AT LAW

SUITE 500

190 NORTH INDEPENDENCE MALL WEST

6TH & RACE STREETS

PHILADELPHIA, PA 19106

(215) 627-0303

FAX (215) 627-2551

WWW.LAVIN-LAW.COM

NEW YORK OFFICE
420 LEXINGTON AVENUE
GRAYBAR BUILDING
SUITE 2900
NEW YORK, NY 10170
(212) 319-6898

FAX: (212) 319-6932

NEW JERSEY OFFICE
1300 ROUTE 73
SUITE 307
MT. LAUREL, NJ 08054
(856) 778-5544

FAX: (856) 793-0237

WRITER'S DIRECT DIAL NUMBER
(215) 351-7936

WRITER'S E-MAIL ADDRESS
JODONNELL@LAVIN-LAW.COM

December 21, 2007

**Via Facsimile and First Class Mail**

Jed S. Freeman, Esquire
The Margolis Law Firm LLC
5 Roseland Farm Road
Roseland, NJ 07068

RE:   Monroe Motor Cars LLC v. General Motors Corporation

Dear Mr. Freeman:

Our firm represents General Motors Corporation in connection with the lawsuit which your client, Monroe Motor Cars, LLC, filed in the Supreme Court of the State of New York, County of Orange which has been removed to the United States District Court for the Southern District of New York. The subject matter of that lawsuit is encompassed by an arbitration provision in Paragraph 9 of the Termination Agreement and Release Agreement between the parties, a copy of which is enclosed for your review. Under the terms of that agreement, General Motors Corporation and Monroe Motor Cars, LLC have agreed to resolve disputes such as those raised in the lawsuit by mandatory and binding private arbitration. Consequently, this letter is a formal demand that your client submit its claims to private arbitration under the procedure outlined in the arbitration provision and dismiss this lawsuit.

Sincerely,

JOHN J. O'DONNELL

JJO/rar

EXHIBIT "B"

## TERMINATION AND RELEASE AGREEMENT

THIS TERMINATION AND RELEASE AGREEMENT (this "Agreement") is made and entered into as of the _____ day of April, 2007, by MONROE MOTOR CARS, LLC, a New York limited liability company, d/b/a Monroe Buick Pontiac GMC ("Dealer"), for the use and benefit of GENERAL MOTORS CORPORATION, a Delaware corporation ("GM").

### RECITALS

A. Dealer and GM are the parties to a Dealer Sales and Service Agreement dated November 1, 2005, pursuant to which Dealer was granted the right to purchase from GM certain Buick motor vehicles. Furthermore, Dealer and GM are the parties to a Dealer Sales and Service Agreement dated November 1, 2005, pursuant to which Dealer was granted the right to purchase from GM certain Pontiac motor vehicles. Furthermore, Dealer and GM are the parties to a Dealer Sales and Service Agreement dated November 1, 2005, pursuant to which Dealer was granted the right to purchase from GM certain GMC motor vehicles. The foregoing Dealer Sales and Service Agreements are sometimes collectively referred to as the "Dealer Agreements."

B. Dealer has agreed to terminate and cancel the Dealer Agreements and all rights and continuing interests therein by written agreement and to release GM from any and all liability arising out of or connected with the Dealer Agreements, any predecessor agreement(s) thereto, and the relationship between GM and Dealer relating to the Dealer Agreements, and any predecessor agreement(s) thereto, on the terms and conditions set forth herein, intending to be bound by the terms and conditions of this Agreement.

### COVENANTS

NOW, THEREFORE, in consideration of the foregoing recitals and the premises and covenants contained herein, Dealer hereby agrees as follows:

1. <u>Payment to Dealer</u>.

   (a) In consideration of Dealer's execution and delivery to GM of this Agreement, and Dealer's termination and cancellation of the Dealer Agreements by written agreement in accordance with Article 14.2 thereof (as set forth in Section 2 of this Agreement), GM shall pay, or cause to be paid, to Dealer the sum of Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00) (the "Settlement Amount"). This payment is consideration solely for the releases and waivers set forth herein, Dealer's termination and cancellation of the Dealer Agreements, and Dealer's transfer to GM of its right, title and interest in and to its customer lists and service records. The Settlement Amount shall be paid to Dealer by crediting Dealer's open account maintained on the General Motors Corporation Dealer Payment System (the "Open Account"), in accordance with GM's standard practices, after the completion of all of the following items: (i) Dealer's compliance with all applicable bulk transfer, sales tax transfer or similar laws and the expiration of all time periods provided therein, and (ii) GM's receipt of this fully executed Agreement, whichever is later.

   (b) If Dealer has not received payment of the net Settlement Amount (which net amount reflects the deduction of all sums owing to GM and its Affiliates) within sixty (60) days after the date Dealer terminates and cancels the Dealer Agreements as set forth herein, and if

Dealer has fulfilled its termination obligations under this Agreement, Dealer may request that GM estimate such net Settlement Amount (the "Estimated Settlement Amount") using the form request attached hereto as <u>Exhibit A</u> and incorporated herein by this reference. Upon such a request, GM will promptly calculate the Estimated Settlement Amount and pay seventy-five percent (75%) of the Estimated Settlement Amount owed Dealer. The remaining balance of the net Settlement Amount, if any, will be paid to Dealer as soon as practicable thereafter.

(c)  GM shall purchase, at the option of Dealer, Eligible Items in accordance with Article 15.2 of the Dealer Agreements and the GM Parts & Accessories Terms of Sale Bulletin No. 2002-1 U.S., as may be amended by GM from time to time. No more than three (3) of Dealer's new, unused, undamaged and unmodified 2006 vehicles shall be considered Eligible Items for purposes of this Agreement. Transfer and payment for the foregoing Eligible Items shall be made on or after the effective date of termination of the Dealer Agreements, and in accordance with GM's standard practices. The consideration recited in paragraph 1(a) of this Agreement is separate and distinct from any consideration that GM may hereafter offer for such Eligible Items. GM shall be entitled to recover, and Dealer shall pay to GM, any unused portions of any interest credit and any other allowances or credits which had theretofore been paid to Dealer with respect to any such Eligible Items.

(d)  Notwithstanding the foregoing, payment of all or any part of the Settlement Amount or amounts for Eligible Items may, in GM's sole discretion, be (i) reduced by any amount owed by Dealer to GM or its Affiliates (as defined below), and/or (ii) delayed until GM has received evidence in form and substance acceptable to GM in its sole discretion that no other party has or claims any interest in the assets or properties of Dealer relating to its General Motors dealership operations which are the subject of this Agreement.

2.  <u>Termination of Dealer Agreement</u>.

(a)  Dealer hereby terminates and cancels the Dealer Agreements by written agreement in accordance with Article 14.2 thereof, such termination and cancellation to be effective on the earlier to occur of (i) April 30, 2007, or (ii) ten (10) business days after GM's receipt of an originally executed copy of this Agreement from Dealer. Dealer covenants and agrees that Dealer will timely pay all sales taxes, other taxes and any other amounts due to creditors, arising out of the operations of Dealer. If the actual date on which Dealer terminates and cancels the Dealer Agreements is more than thirty (30) business days after the date Dealer executes this Agreement, Dealer shall on the date of and as a condition to the payment of the Settlement Amount, execute a Bring-Down Letter in the form attached hereto as <u>Exhibit B</u>.

(b)  Dealer acknowledges that the provisions of Article 15.3 of the Dealer Agreements do not, by their terms, apply to such termination and cancellation. Dealer hereby reaffirms the inapplicability of Article 15.3. Dealer expressly agrees that the terms of such Article 15.3 shall not apply to Dealer's termination and cancellation of the Dealer Agreements by written agreement and that GM shall have no obligations thereunder.

(c)  Dealer acknowledges that all termination rights of Dealer are expressly set forth herein and that any termination assistance otherwise available to Dealer as set forth in any state statute or regulation shall not apply to Dealer's termination of the Dealer Agreements described herein.

(d)     Concurrently with its termination and cancellation of the Dealer Agreements, Dealer hereby conveys to GM all of Dealer's right, title, and interest in and to its customer lists and service records for its Buick, Pontiac and GMC dealership operations.

3.     Release; Covenant Not to Sue; Indemnity.

(a)     Dealer, for itself, its Affiliates and any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors, and assigns (collectively, the "Dealer Parties"), hereby releases, settles, cancels, discharges, and acknowledges to be fully satisfied any and all claims, demands, damages, debts, liabilities, obligations, costs, expenses, liens, actions, and causes of action of every kind and nature whatsoever, whether known or unknown, foreseen or unforeseen, suspected or unsuspected ("Claims"), which Dealer or anyone claiming through or under Dealer may now or hereafter have against GM, its Affiliates or any of their members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors or assigns, arising out of or relating to the Dealer Agreements, and any predecessor agreement(s) thereto, provided, however, that the foregoing release shall not extend to (i) reimbursement to Dealer of unpaid warranty claims, (ii) the payment to Dealer of any incentives currently owing to Dealer, any amounts currently owing to Dealer in its Open Account, or any amounts due or to become due to Dealer in connection with its return of Eligible Items pursuant to Article 15.2 of the Dealer Agreements, or (iii) any Claims of Dealer pursuant to Article 17.4 of the Dealer Agreements, all of which amounts described in (i) - (iii) above of this sentence shall be subject to setoff by GM of any amounts due or to become due to GM or any of its Affiliates. GM shall not charge back to Dealer any GM warranty claims approved and paid by GM prior to the effective date of termination and cancellation, as described in Section 2 above, after the later to occur of (A) the date six (6) months following payment, or (B) the effective date of termination and cancellation, except that GM may make charge-backs for false, fraudulent or unsubstantiated claims within two (2) years of payment. GM represents that its obligations pursuant to Section 17.4 of the Dealer Agreements shall survive the termination of the Dealer Agreements.

(b)     Dealer, for itself, and the other Dealer Parties, hereby agrees not to, at any time, sue, protest, institute or assist in instituting any proceeding in any court or administrative proceeding, or otherwise assert any Claim that is covered by the release provision in subparagraph (a) above. Notwithstanding anything to the contrary, Dealer acknowledges and agrees that GM will suffer irreparable harm from the breach by any Dealer Party of this covenant not to sue and therefore agrees that GM shall be entitled to any equitable remedies available to GM, including, without limitation, injunctive relief, upon the breach of such covenant not to sue by any Dealer Party.

(c)     Dealer shall indemnify, defend and hold GM, its Affiliates and their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors and assigns (the "Indemnified Parties") harmless, from and against any and all claims, demands, fines, penalties, suits, causes of action, liabilities, losses, damages, costs of settlement, and expenses (including, without limitation, reasonable attorneys' fees and costs) which may be imposed upon or incurred by the Indemnified Parties, or any of them, arising from, relating to, or caused by Dealer's (or any other Dealer Parties') breach of this Agreement or Dealer's execution or delivery of or performance under this Agreement. "Affiliate" means, with respect to any Person (as defined below), any Person that controls, is controlled by or is under common control with such Person, together with its and their respective partners, venturers, directors, officers, stockholders, agents, employees and spouses. "Person"

means an individual, partnership, limited liability company, association, corporation or other entity. A Person shall be presumed to have control when it possesses the power, directly or indirectly, to direct, or cause the direction of, the management or policies of another Person, whether through ownership of voting securities, by contract, or otherwise.

4. **Due Authority**. Dealer and the individual(s) executing this Agreement on behalf of Dealer hereby jointly and severally represent and warrant to GM that this Agreement has been duly authorized by Dealer and that all necessary corporate action has been taken and all necessary corporate approvals have been obtained in connection with the execution and delivery of and performance under this Agreement.

5. **Confidentiality**. Dealer hereby agrees that, without the prior written consent of GM, it shall not, except as required by law, disclose to any person (other than its agents or employees having a need to know such information in the conduct of their duties for Dealer, which agents or employees shall be bound by a similar undertaking of confidentiality) the terms or conditions of this Agreement or any facts relating hereto or to the underlying transactions.

6. **Informed and Voluntary Acts**. Dealer has reviewed this Agreement with its legal, tax, or other advisors, and is fully aware of all of its rights and alternatives. In executing this Agreement, Dealer acknowledges that its decisions and actions are entirely voluntary and free from any mental, physical, or economic duress.

7. **Binding Effect**. This Agreement shall be binding upon any replacement or successor dealer as referred to in the Dealer Agreements and any successors or assigns.

8. **Effectiveness**. This Agreement, and any offers made by GM to Dealer with respect to the implementation of GM's marketing channel strategy in Dealer's metropolitan area, shall be deemed withdrawn and shall be null and void and of no further force or effect unless this Agreement is executed fully and properly by Dealer and is returned to GM on or before April 27, 2007. This Agreement shall be deemed executed on the date on which it has been fully and properly executed by both parties, which date shall be entered in the introductory paragraph of this Agreement.

9. **Disputes - Arbitration**.

(a) Subject to the following provisions of this section, GM and Dealer agree to submit to final and binding arbitration, upon either party's written notice, any and all claims, disputes, and controversies between them arising under or relating to this Agreement and its negotiation, execution, administration, modification, extension or enforcement (collectively, "Claims"). Such arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") at an AAA regional office nearest the Dealership Premises. The intent of this paragraph is that the parties hereto agree to mandatory, binding arbitration of Claims in a private proceeding involving only the parties. Under no circumstances shall any Claim be combined with, joined with, or adjudicated in, a common proceeding with Claims involving persons in addition to the parties.

(b) GM and Dealer agree that the dispute resolution process outlined in this section shall be the exclusive mechanism for resolving any Claims. All arbitration awards are binding and non-appealable except as otherwise provided in the United States Arbitration Act (9 U.S.C. § 1, *et seq.*). Any court with jurisdiction may enter judgment upon the award rendered by the arbitrator, and the parties agree to be bound by such award.

(c) Arbitration hereunder shall take place before one (1) arbitrator. The arbitrator shall be neutral and an attorney actively engaged in the practice of business law for at least ten (10) years or a retired judge of a state appellate court or a federal district or appellate court. The AAA shall submit a list of persons meeting the criteria outlined above for such arbitrator, and the parties mutually shall agree upon the arbitrator in the manner established by the AAA. If the parties are unable or fail to agree upon the arbitrator, the AAA shall select the arbitrator.

(d) The arbitrator shall have the discretion to order a prehearing exchange of information by the parties, including, without limitation, production of requested documents, an exchange of summaries of proposed witness testimony, and depositions of parties, all of which shall occur within sixty (60) days after the appointment of the arbitrator.

(e) Dealer and GM will share equally in all administrative expenses, including, but not limited to, travel, lodging and meals of the arbitrator, rental of meeting and hearing rooms, any expenses for transcribing or recording the arbitration proceedings, and any other reasonable expenses relating to the arbitration process. Dealer and GM shall be responsible for their own costs and expenses including, but not limited to, attorneys' fees and expert witness fees.

(f) No arbitration may be commenced after the expiration of the applicable statute of limitations. The arbitrator may award only compensatory damages and may not award any punitive or exemplary damages. The arbitrator may award interest at the prevailing judgment rate.

10. Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the state of Michigan.

11. Complete Agreement of the Parties. This Agreement and the schedules, exhibits and attachments to such agreement (i) contains the entire understanding of the parties relating to the subject matter of this Agreement, and (ii) supersedes all prior statements, representations and agreements relating to the subject matter of this Agreement. The parties represent and agree that, in entering into this Agreement, they have not relied upon any oral or written agreements, representations, statements, or promises, express or implied, not specifically set forth in this Agreement. No waiver, modification, amendment or addition to this Agreement is effective unless evidenced by a written instrument signed by an authorized representative of the parties, and each party acknowledges that no individual will be authorized to orally waive, modify, amend or expand this Agreement. The parties expressly waive application of any law, statute, or judicial decision allowing oral modifications, amendments, or additions to this Agreement notwithstanding this express provision requiring a writing signed by the parties.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Dealer has executed this Termination and Release Agreement through its duly authorized officer as of the day and year first above written.

MONROE MOTOR CARS, LLC, a New York limited liability company, d/b/a Monroe Buick Pontiac GMC

By: _____
Name: Mark A. Brodsky
Title: Managing Member

The undersigned hereby executes this Agreement solely in connection with Section 1(a) above.

GENERAL MOTORS CORPORATION, a Delaware corporation

By: _____
M. L. Heisel, Finance Director, or
S. M. Sprague, Finance Manager

By: _____
M. L. Valerio, Regional Director, or
P. Bottiglieri, Regional Manager